You may proceed. Thank you, Your Honors, and may it please the Court. I'm Christina Jump here on behalf of the appellant, Lassana Magassa, and here along with my colleague, Alyssa Morrison, who joins me at the table. And I would like to reserve four minutes for rebuttal. Lassana Magassa does not pose a threat. That's the determination that the TSA ultimately made in 2019. Yet for three years, he lost his job and his right to work in his chosen profession and suffered reputational harm for reasons he still does not know and has not been able to directly challenge. Can I ask about the jurisdictional question on the APA claim? Yes. As I read the complaint, your client has sort of two APA claims. One is the specific decision here was improper contrary to law in his case, but also a challenge to the redress procedures more generally. Is that accurate, or have you fallen on one side of the fence or the other? He is challenging the procedures more generally. The ultimate decision of the TSA was in his favor, so he's not challenging the ultimate. They ultimately withdrew because they ultimately withdrew, you're saying? Correct, Your Honor. Okay, so he's no longer challenging the initial revocation because that's been resolved. He's not asking any court to review that, correct, because it has been resolved. So how does he have standing to raise the more general objections to the process under the APA when ultimately he won in his own particular situation? Your Honor, I have two answers for that. The first, which applies to several of his claims as to standing, is that as like in this Court's recent ruling in the FICRE case, this is likely to happen again. As he was given just an individualized determination untethered to any particular change, no reason given to him, nothing that he can take to heart and know will not change. This is something that is very likely to come up again at any given moment. But is it likely to come up again as to him, or is it likely to come up as to somebody else? It is equally likely to come up again as to him. He was not given a reason that the original bad decision, the original adverse decision was made, and he was not given a reason that it was rescinded. What do those reasons matter? If they've ultimately given him what he sought, what does it matter for why they made the initial decision? They seem to have confessed error and changed the decision, so why does it matter? How could that impact a future decision? That impacts the future because, first of all, there's a three-year delay between the two. So for three years he could not have that job. He put three years to set that time. Well, I agree, which is why I had always assumed you were challenging the individual decision, and you've now clarified you're not. We're challenging the process that, basically the process that led to that, and it leads to him not having any, again, any ability to directly address it or to directly challenge any claims brought against him, any allegations raised against him. But, again, it can come up just as they took it away once. They could take it away again. This Court in the recent FICRE decision held that the individualized determination untethered to any explanation or change, much less an abiding change, means that it can come up again, and that is something that can happen again to Mr. Magassa, now Dr. Magassa. You said you had another reason. If I can interrupt just to ask one quick question. Does the redress process, does it say the government will never tell you what the reasons are, or is it just in this particular instance the government didn't reveal the reason why? The security threat assessment redress process is incredibly vague as to what it allows and what it requires. For example, when we had an administrative hearing on that issue back in, I believe that was 2017, we were able to attend along with Mr. Magassa as his counsel and along with him one day of the hearing, and we were excluded from a second day of the hearing, as was he. All of that is left up to the determination and the discretion of the TSA as to what it decides to reveal and what it decides to allow counsel or the complainant to be able to determine. It's purely discretionary. The administrative law judge actually in that proceeding issued a ruling that he agreed that we probably were ultimately entitled to this if we were in a federal court in a general concept, but because we were operating under the security threat assessment rules, that it was purely under those rules, the discretion of the TSA, whether they wanted to reveal any information, they chose not to, and he did not have discretion or authority to change that. So if I may interrupt, in any future potential proceeding against your client, I guess it's possible the TSA may reveal the reason why, if they ever take any action, of why they're suspending his status or security clearance. The problem is that they may or may not, and that's the problem, is that there may be, they may choose that time to reveal it, or they may choose to continue to not reveal any problem if there's a future issue, if he has to go through the whole thing again and have a Groundhog Day sort of recurrence. That's exactly what could happen to him once more. The second thing that I wanted to raise in response to your- I'm sorry, forgive me for also interrupting. So in order to show standing for your APA claims, if I understand what you're saying, you have to show that there is a likelihood that this would happen to him again in the future. What basis is for that, for saying that, let alone, I mean, first, we don't know that it would happen at all. Second, as was just pointed out, they might give the reasons the second time, and then you wouldn't have the same objection. Why isn't this just pure speculation on your part? Because of the type that it did happen. What's happened in the past, the fact that it did happen, the fact that he was out of work for three years from that job because of it. But you're not seeking damages, as I understand it, on this claim. We are not on this claim, looking back to that. But what, again, there's no guarantee that's been given by the government, and the same as just choosing to take somebody off as a voluntary cessation type parallel, choosing to take somebody off the no-fly list, they could put him right back on. The same is true with Mr. Magasa. They could take that away, again, with no explanation, as they did before, and he could be subject to, again, all of the same harms as he was before. I guess, would this be analogous to, I mean, you're essentially just challenging a general rule that an agency has. I mean, don't we have to just analyze this under when does somebody get standing to challenge a general rule? And I guess in that, maybe your client has some leeway because he has been subjected to this in the past. So is that a different analysis? I mean, this isn't exactly like capable of repetition yet evading review. You're not really arguing that. It's really whether he could be subject to this again. It is whether he can be subject to it again. I do want to just very quickly, before I lose track and get deeper into something else, finish the second point as to your earlier question, which is that under the APA, the definition of a final order includes rules, licenses, or orders. And so to have jurisdiction under the APA, you can challenge a license rule or order. But are you saying this is an order? I'm saying that the security threat assessment process is a rule, is an agency rule that he can challenge. And I'm saying that the credential that he had is tantamount to a license, equivalent to a license. So if it's a rule or an order, I mean, that seems to be the debate. If it's an order, then you seem to have a problem with, at least textually, with the jurisdictional point that that had to have been brought in the Court of Appeals. Now, how do you respond to that? Your Honor, for 46-110 to kick in and for it to be necessarily brought in the Court of Appeals, that would be if we were asking the court to step in and factually review the determination made by the agency, which as he ultimately received a favorable determination was not. Well, I'm not sure. I don't think that that's accurate. I mean, if it's a facial challenge to an order, then I think that would also fall within it. I mean, the question where it gets murky is whether these rulemakings are necessarily orders or not. I believe, Your Honor, that because, as the district court properly analyzed here on the 46-110 issue, that the issues are inextricably intertwined here. And there is, because he's bringing a constitutional challenge to the process as a whole, to the procedures as a whole, and all of the proper parties are named, that 46-110 would not kick in. I just wanted to make sure that I did address the second part of your original question there. Again, Dr. Magasa here has shown redressability in that, again, he's not seeking a new determination. He's not asking for any court to order the TSA to change its mind. What he is saying is that he shows the perspective harm, likelihood of perspective harm, as the district court correctly held, because this very likely could happen to him again, as it did in the past. And he, again, has not had the opportunity. He doesn't know, he hasn't had the opportunity to directly challenge, because he's never been given a reason for anything. There were disclosures that were made, but they were 95 or more percent redacted. They basically just revealed the headers, the footers, his name, and everything else was redacted. So he has no substantive information. He's suffered the reputational harm as well, as we identified, the inability to work in his chosen profession. And with that, I would, at this time, unless you have any further questions, like to reserve the remaining time for rebuttal. Thank you very much. We'll hear from the government. May it please the Court, Justice Santos, on behalf of the United States. I'd like to start with standing, since that was the focus of the time with my colleague here. The problem here is the plaintiff brought his suit after he had already obtained what he was asking for. At this current time, he's already working at an airport again. He has a job similar to the one that he previously held. I think the argument, picking up on Judge Nelson's question to your adversary, is that given what happened to him, namely, out of the blue, he gets treated as a security threat for no reason that is ever given. The fact that ultimately, after three years, the government relented and changed its mind, doesn't mean that he has no standing, that he has to be forced to live in constant jeopardy of this happening again. So, Your Honor, to bring suit in federal court in the first instance, the standing question, it's the plaintiff's burden to show an imminent injury if he's going to seek prospective relief. It's not a mootness question like the FICRA case that my colleague pointed out there. It's mootness. The burden switches. The government has to make a stronger showing that it won't happen again. At the standing stage, plaintiff's burden is to show an imminent injury. At the time the complaint was filed, plaintiff was no different from any of the 1.4 million aviation workers whose employment is contingent on recurring threat assessments. I agree with that, but couldn't anyone challenge it and say, look, you've adopted this rule. Well, first of all, do you agree that this is a rule? Is this a rulemaking? Is it an order? Within the definition of order in 46.110, it's an order. The test that this court has adopted in Gilmore and other cases, the test across the circuits, have recognized that order in 46.110 and very similar jurisdictional statutes means any final agency decision. The redress process here is such a final decision. So let me dovetail off that because in Ibrahim and Gilmore, I agree that it suggests that this is an order that would go to the Court of Appeals, but we have the Mace opinion from 1998, which seems to go the other way. Do we have an intra-circuit conflict here that we need to resolve? No, Your Honor. I would point you to the Ninth Circuit's case in Americopters, which I think explains how this works. Mace was a case where there was a Bivens claim, and the claim, the particular TSA order at issue there was an individualized order. And then there were separate claims about particular practices that the FAA had. And what the court said, no one thought that those practices were themselves orders. And what the court said was, well, this is a Bivens claim, that's for damages, which is outside the scope of 46.110. 46.110 only authorizes amending modification of the order, et cetera. So is that the distinction between orders subject to 46.110 and Mace, cases like Mace, you have to have a damages claim? Is that the distinction? So the Americopters explains this. The distinction is both that it has to be a damages claim and that it has to be a claim that isn't inextricably intertwined with a TSA order. And in later cases, applying Mace, like in Crist and other cases, the court has said, you can't just say it's outside 46.110 because it's a facial constitutional claim. You still have to ask, is there a TSA order involved here? And here, the redress process is such an order because it is TSA's final word on procedures, the scope of ALJ review, for example, the layers of review that will apply in these administrative appeals. Okay, so that gets to where it can be brought. But why wouldn't anyone who's potentially subject to it have a right to challenge it? If I'm a TSA employee and they pass a rule that says, you know, we're just going to be able to fire you for any reason at all or just, you know, any potential threat. We don't have to tell you anything. If I'm an employee subject to that rule, why wouldn't that be enough to give me standing to challenge the rule? Because here, plaintiff is not subject to these administrative appeal proceedings until those proceedings actually begin. To clarify, this redress process will only harm plaintiff in the way that he suggests if TSA were to once again consider him a threat based on classified information because otherwise these claims don't arise. And then plaintiff would have to administratively appeal.  And even then, it's not even clear that this dispute would come up because plaintiff, in his reply brief, seems to suggest that an unclassified summary of the kind allowed for under the redress process might be sufficient if it's sufficiently detailed. So we're really, really far away from a concrete controversy. And I would point out that the D.C. Circuit just last year dismissed a case on standing grounds in a very factually similar context. That was al-Sarraji. It's an unpublished case, but I do think it illustrates the ordinary application of longstanding Article III principles there. As here, TSA had already withdrawn its negative threat assessment. The plaintiff was challenging certain appeal procedures. That case, you can find it at 2021 Westlaw 553-7735. But I would also note that setting aside the bedrock constitutional problem with- Was that cited in your papers? Sure. It's 2021- No, I'm sorry. Did you cite it in your brief? It was not in the brief, Your Honor. Did you tell your adversary before today's argument that you were going to rely on it? So I believe that my adversary was involved in that case. Ah. Does she correct me if I'm wrong? So I also want to point out that- Wouldn't it have been a more appropriate practice to tell your adversary, you know, by the way, even though not cited in my brief, I'm going to make mention in an oral argument of a case which I think is in point. So you may want to be prepared for the possibility that I may do that. Your Honor, if you would like not to consider that case, it's out there. I just did a little more research before showing up here today. But let me just switch to a different topic that I do want to make sure to address here, which is that setting aside the bedrock constitutional problem with seeking this kind of prospective relief against the government in the absence of an imminent injury that's alleged, there is the ripeness issue, which this Court has explained in its cases. So repeatedly, both in Al-Haramain and in Kesham and other cases, this Court has said that this kind of due process claim, due process claims involving the disclosure or nondisclosure of classified information, that those claims are really difficult to resolve in the abstract. And in fact, the Court has said that it shouldn't do so. The Court has said that its test in this area is a case-by-case analysis that turns on the particular classified information, the particular national security reasons that the government is invoking for not disclosing the information. And here we don't have any information available. All we have is an abstract challenge to the redress process, which itself provides some of the very procedures that this Court has upheld on a case-by-case basis, namely the unclassified summary, as well as review by an independent ALJ. So it doesn't make sense, Your Honor, respectfully, for this Court to be addressing constitutional claims in the absence of any concrete scenario when this Court has said that those concrete scenarios are critical for this kind of claim, and especially because there is no imminent injury or, at the very least, it is several steps removed here. The second jurisdictional issue that I would like to address here is 46.110, which we've touched on a little bit already. But the district court believed that it didn't apply because it believed that the redress process was not final. As I just explained a little bit earlier, it is a final order. It is TSA's final word on these procedures. And therefore, under the case law across the circuits, it is challengeable. I would point this Court as well to the National Federation of the Blind case in the D.C. Circuit, which is in our brief, and that case explained that across the circuits, challenges to rules fall within the word order in these types of jurisdictional statutes where Congress was trying to channel these sorts of claims to the courts of appeals. And under this Court's case law in Americopters and case law across the circuits, as well as also mentioned in National Federation of the Blind, courts have said that failure to file in the correct court is not a ground for reasonable cause to delay filing in the court of appeals, particularly when, as here, the potential jurisdictional problem was pointed out fairly early in the process. So at this point, I would just briefly say that on the merits, plaintiff's claims fail for a number of reasons that we've explained in our brief. The claim against the individual defendant also fails based on the text of the statute, as the district court pointed out, and I would welcome any questions that the court may have. I want to go back to the standing argument. You're basically asking, I mean, you're basically asking us to affirm on an alternate basis because the district court found standing, correct? That's right. Okay. That's right. And there are several, many cases that say that this court can affirm on alternate grounds on appeal, even if the district court found the other way, especially with a jurisdictional issue like standing. And are we, do we give any deference to, I guess this is on a motion to dismiss, right? So there's no, so is any deference due to the district court on its finding regarding likelihood of recurring? No, Your Honor, I don't believe so. In particular because the district court's reasoning was that it thought that it was enough that plaintiff, like the 1.4 million other aviation workers, was undergoing the threat assessments. But what we're saying is, in fact. This circumstance, I'm not sure it's fair to say he's just like the 1.4 million employees. It's more accurate to say he's more like the employees who've had this happen to him in the past. And that must be a much smaller subset. So the point that I was saying was that the fact that he undergoes assessments is not the same thing as being subjected to the redress process, much less being injured by it in the way that plaintiff suggests. Because the only way that that happens is if there's a negative threat assessment, which the complaint alleges no facts to suggest that is imminently likely to occur. What if the rule said, you know, you're not subject to this until you come in, but if you happen to be a Muslim, you are under much closer scrutiny, and he happens to be Muslim. Would that be enough to say, hey, I get to challenge this? Or would the government come in here and say, hey, he can't challenge it until we've actually brought an actual claim against him? Well, the critical difference in the hypothetical that you're describing is that the policy itself would say that it's extremely likely that this person might be subject to it, or it makes it a lot likelier that this particular person might be subject to it. And that's very different from what we have here. What we have here is just the fact that he was previously found to be a possible threat, and then that was withdrawn to say it withdrew that determination. He's now held an airport badge for a number of years without any incident, despite the continuous assessment. But it's a little odd because, I mean, the plaintiff, Magasa, he does have his claim that, well, I don't even know why I was subject to it. Even though you gave him relief, the government never told him why he was subject to it. It's sort of like, hey, we're not going to give you the basis. I mean, what if my hypothetical is really how it happened, that the government just has a rule that says, hey, if you're Muslim and you've traveled to Europe, we're going to trigger this. And that was all classified, and you never told him, and then you said, oh, well, he challenged us. We know we've got a problem here. We're just going to release. We're going to give him what he wants. We're going to make this case go away. You'd effectively, you know, bar the government from ever having to actually disclose how it's actually making these decisions. So these kinds of cases do come up. They just come up when there's an actual negative determination in play. So like in Kashem, which was a no-fly determination, or like in al-Haramein, which is the terrorist designation where assets were frozen. These cases come up where they don't tend to arise is this scenario where it's an abstract challenge. There is no negative assessment in play at all. And I would note, I don't believe that there is any concern with the government not providing reasons when it's classified and then, in fact, withdrawing the negative assessment. And then plaintiff has the relief that he was seeking, and that would usually avoid any waste of resources. Your point is they just took a closer look at this and determined he was no longer a threat, so that was okay. Well, so they took a look at a different point in time because these assessments are made. They're predictive judgments. They're made based on the information that the TSA has at the time. That can change. Information can become stale. We don't really know, do we, on this record, why your agency changed its determination. It could have been that they decided, yeah, if we fight this, we're going to have to give some reasons, and we don't want to give those reasons because they would impact our classified information. And if that were the case, and who knows whether it was or not, then the likelihood of recurrence would be greater because then once that classified information became stale, then the agency would not have that reason for changing its determination. Do you see what I'm saying? I see. I'm out of time. May I briefly respond? So at first, I would just point out that at the standing stage, when the plaintiff is invoking the federal course restriction, it is the plaintiff's burden to establish facts showing that this is imminently likely to occur. I agree with you on that. I agreed on that the first time you said it, but I'm glad you said it again. Go ahead. Okay. I just had a second brief response, which is that with something like this with classified information, I don't think that there should be that much concern that the government is willing when it still believes that there is information suggesting a threat to just take away the assessment in order to prevent a case from coming to this court, particularly when there are cases like this regarding various designations based on classified information. But my question ultimately was we do not know, do we, on this record, why the government changed its mind. No, we don't. And that highlights the abstract nature of the claims here and why the court shouldn't reach them. Thank you very much. Thank you. Your Honors, if I could pick up exactly where my colleague across the aisle left off. There's a lot we don't know on this record, and that's one of the problems. There is no reason given in this record for any of the decisions that have been made. This was not classified information, incidentally. The government never claimed it was classified. What the government said was that it was SSI, it was sensitive security information, that the TSA had discretion to reveal and chose not to. But, again, we don't have that fact developed. As to the reference, I think it's directly on point that a case-by-case analysis of what's appropriate in any given situation requires a more developed record than we have. And I do believe that either deference is appropriate to the district court on its standing determination here or that a remand to the district court to further develop the record so that we could determine if there are any additional issues. Wouldn't we have to decide that there's jurisdiction first before we remand? I mean, one way to avoid the standing question, if we think it's difficult, is to decide the jurisdictional point. And you just heard the argument that, you know, if there's no – at a minimum, there has to be damages for a case like this to go to district court. There's no damages that are alleged in this case, right? Your Honor, at the time that we filed the last complaint in this case, the retrospective damages did not appear to be available. At this time, if it were on remand and we were given the opportunity to amend, we could then bring a retrospective damages claim under. Can jurisdiction – I mean, standing can't be cured after the filing of the complaint. Could jurisdiction be cured? I guess it could be cured. It can be revisited and corrected at any time. We do believe that there is jurisdiction here anyway. But as to damages for past harm – How do you address this potential conflict – maybe there's not – versus Mace, which apparently, you know, is in your favor, which says it could go to the district court. Correct. The case of – get back to that one. The case of Mace v. Skinner, we agree in that one that, as this court pointed out, that these are things that the district court would have discretion over and would have the ability to review. Mace concluded that the district court had erred in holding the 46-110 divestitive jurisdiction because the claims were not based on the merits of the individual situation but constitute a broad challenge to allegedly unconstitutional practices, which is what this court and Mace had held, that that was a sufficient reason for 46-110 not to apply. It also pointed out that we have defendants in this matter not named in 46-110. The TSC is not named in 46-110, nor is the FBI, and those are proper defendants here. Many of the cases where 46-110 has been applied have been cases where only the named – the only named defendants are ones who are covered by the language of the statute in 46-110. They're agencies covered by that. Here we have defendants who are not covered by the language of 46-110. They're not named in the statute as being covered there, which is the TSC is not covered and the FBI, I do not believe, is covered there as well. Do you want to briefly address the D.C. Circuit case, the unpublished opinion? If we're referring to El-Sarraji, is that – yeah. I'm very familiar with the El-Sarraji case. It is ours. And Mr. El-Sarraji was denied a TWIC card, and he – there are some parallels in the timing, and that it actually was ongoing. It was happening in parallel with Mr. Magasa – at the time Mr. Magasa, now Dr. Magasa's administrative challenges as well, and just temporarily happened to be at the same time. But that was a TWIC card procedure, and in that case, under slightly different rules as we were proceeding, Mr. El-Sarraji got his TWIC card ultimately on the eve of the administrative trial, and he then filed a lawsuit with non-identical claims to what Mr. Magasa has in here. I don't have that particular complaint with me. I do know they were not identical. And they're not all the same claims, and it's not all the same harm that's alleged. What had happened there was that he was precluded from beginning the employment as a driver who needed a TWIC card with an entity that had offered him employment where he would need to be working at a port, and then he got his TWIC card again many years later. But, again, it's a different – it's a slightly different framework. There are different claims. I would be glad if the court would like to provide supplemental briefing on that, but I don't have that complaint in front of me here. But, ultimately, I will say another case that is cited in our briefs is the Jabril case. It was also out of the D.C. Circuit, with which I'm also very familiar. It's another one of our cases and also one that I believe counsel would be familiar with, and it's cited on page 8 of our reply. And the Jabril case held two things that are of important here, which is that the plaintiff should not need to suffer new harm in order to complain about – in order to bring the complaint. They go to the standing. Mm-hmm. They go to standing. Correct. I think we have those cases. It's probably time to sum up. Mm-hmm. Okay. Again, in that case, it also addressed, I believe, the 46-110 found, as the district court did here, that it does not apply. So we believe that that's appropriate to this instance, and we would just certainly – we would just sum up by pointing out that, as this Court noted in the recent – in its recent holding in FICRE, that an assurance where the government is practically and legally free to return to its old ways despite abandoning them in ongoing litigation, it doesn't give any assurances to any individual, to a plaintiff, and is not sufficient to negate standing or to negate the risk of future harm. And with that, I thank the Court. Unless there are any further questions, we appreciate your time here today. Thank you very much. Thank you to both counsel for your arguments. The case is now submitted.
judges: NELSON, LEE, Rakoff